SiNNOTT, Judge,
delivered the opinion of the court:
This cause involves the taking of plaintiff’s property and riparian rights by defendant. Plaintiff at the time the cause of action arose was and still is the owner in fee of the tracts of land described in the petition herein situated on Boush Creek in the State of Virginia, together with the riparian rights thereto belonging. Plaintiff’s land was bordered on its southern and western boundaries by Boush Creek, a navigable, tidal stream a mile and a half long, and varying in width from four hundred feet at its mouth to about fifteen feet at its head. Between the banks at low-water mark there existed marsh ground on which there was a considerable growth of marsh grasses. From the east side of said Boush Creek to low-water mark on the west side thereof the stream was generally navigable for small boats in the channel for practically its entire length. The mean rise and fall of the tide was 2.6 feet and the channel was navigable its entire length at high water for boats drawing three feet. Residents living on the boundaries of Boush Creek were accustomed to using it for convenience, pleasure, fishing, and boating, through the use of small motor boats, skiffs, and rowboats. The drainage of the land adjacent to and bordering on Boush .Creek was well defined.
In the year 1918 defendant conducted hydraulic dredging operations in the building and completion of the United State Army base at Norfolk, Virginia. In these dredging operations large quantities of mud and silt were dumped into the headwaters of Boush Creek and partially filled the same with a deposit of soft, slimy mud and left an unsightty, ugly marsh and created an insanitary condition, impaired the natural drainage of plaintiff’s land to such an extent that its complete restoration could not be effected except at a very heavy cost; also the ebb and flow of the tide in the bed of Boush Creek was greatly reduced, navigation was interfered with, as well as plaintiff’s access to the creek from its riparian land. From the headwaters of Boush Creek down to the Belt Line bridge a deposit of mud and silt some two or three feet in depth was made over the entire bed of the creek, also on the banks of the creek between high and low water, and from the Belt Line bridge downstream a deposit *61 of approximately one-half foot was made, both over the entire bed of the creek and on the banks between high and low water, which deposit gradually decreased to zero. Defendant knew and foresaw that the natural result of its dredging-operation would be the deposit of mud and silt in Boush Creek and on plaintiff’s riparian lands between high and low water.
The deposit of mud and silt on plaintiff’s riparian lands between high and low water, the interference with the drainage of plaintiff’s lands as well as with its access to the creek, and impaired navigation, all due to defendant’s operations, as set forth in Finding IV, depreciated the market value of plaintiff’s lands in the sum of $11,600, as set forth in Finding VIII.
The plaintiff as a riparian owner in Virginia owns in fee simple to low-water mark. Norfolk City v. Cooke, 27 Grat. 430; Taylor v. Commonwealth, 102 Va. 759; Va. Code, 1918, Sec. 3574.
In our opinion, under the authority of the cases cited, infra, the operations of defendant amounted to a taking of plaintiff’s property, from which a promise for compensation should be implied: United States v. Great Falls Manufacturing Co., 112 U. S. 645; United States v. Lynah, 188 U. S. 445; United States v. Cress, 243 U. S. 316; Portsmouth Harbor Land & Hotel Co. v. United States, 260 U. S. 327.
Judgment should be ordered in favor of plaintiff, and it is so ordered.
Green, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.